IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION



EOD

09/16/2020

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| **STEPHEN HAYS** | § | Case No. 19-40502 |
| xxx-xx-3179 | § | |
| **and CHRISTINE HAYS** | § | |
| xxx-xx-2113 | § | |
| Debtors | § | Chapter 7 |

| | | |
|---|---|---|
| SHELBY SPEARS | § | |
| | § | |
| Plaintiff | § | |
| v. | § | Adversary No. 19-4044 |
| | § | |
| STEPHEN HAYS | § | |
| | § | |
| Defendant | § | |

### MEMORANDUM OF DECISION REGARDING
### PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

On this date the Court considered the Motion for Summary Judgment filed by the Plaintiff, Shelby Spears (the "Plaintiff"), in the above-referenced adversary proceeding and the response filed in opposition to such motion by the Defendant, Stephen Hays (the "Defendant"). The Plaintiff's complaint filed in this adversary proceeding contends that the debt allegedly owed to the Plaintiff by the Defendant arising from a purported assault should be declared nondischargeable pursuant to 11 U.S.C. § 523(a)(6), which excepts from discharge a debt "for willful and malicious injury by the debtor to another entity or to the property of another entity."

Upon due consideration of the pleadings, the proper summary judgment evidence submitted, and the relevant legal authorities, the Court concludes that the Plaintiff has failed to demonstrate that there is no genuine dispute as to any material fact and that she is entitled to judgment as a matter of law. This memorandum of decision disposes of all issues pending before the Court.[1]

**Factual and Procedural Background[2]**

In January 2017, the Defendant, Stephen Hays, a resident of Frisco, Texas, traveled to Vail, Colorado, to meet for business and pleasure purposes with a business friend, Joseph Mrak. On the evening of January 19, 2017, the two visited several drinking establishments in Vail, accompanied by mutual friends, including the Plaintiff, Shelby Spears. As the evening passed into early morning, both the Plaintiff and the Defendant had been drinking extensively and were likely intoxicated as they traveled to

---

[1] Though the Plaintiff's complaint statutorily constitutes a core proceeding as contemplated by 28 U.S.C. § 157(b)(2)(l), the fact that the complaint clearly alleges a personal injury tort claim against the Defendant places it within the scheme of 28 U.S.C. § 157(b)(5) and, as stated in the *Order of Reference of Bankruptcy Cases and Proceedings Nunc Pro Tunc* entered by the United States District Court for the Eastern District of Texas on August 6, 1984:

> . . . it is further ORDERED that all personal injury tort and wrongful death claims arising in or related to a case under Title 11 pending in this court shall be tried in, or as determined by, this court and shall not be referred by this order.

Since § 157(b)(5) pertains only to the proper allocation of judicial power between the district court and the bankruptcy court and is not jurisdictional, *Stern v. Marshall*, 564 U.S. 462, 479 (2011), and since no final adjudication on the merits has been made, the limitations imposed by § 157(b)(5) and the District Court's Standing Order of Reference remain intact.

[2] The facts presented are those which stand uncontested between the parties and are presented only as a general factual background to the legal claims asserted in this case. This section is not intended to resolve any disputed or contested facts between the parties.

and from the various Vail bar establishments.  Though the parties dispute who initiated the growing verbal conflict, each made disparaging comments toward the other that escalated as the evening advanced.  Soon the verbal jousting became physical.  Video captured the Plaintiff slapping and kicking the Defendant and seeking to lift the Defendant's shirt on various occasions in the cold winter air while the verbal conflict between the parties continued.  As the parties approached a series of outdoor stairways leading to a parking garage, the Defendant allegedly struck the Plaintiff in the face, causing her to fall down a portion of the lower stairway.  The Defendant immediately left the scene, as the remaining members of the group took the Plaintiff to the hospital for treatment of various physical injuries.  The Plaintiff has alleged that she sustained serious injuries from the encounter including two black eyes, facial abrasions, limb bruises, and a concussion.

After reviewing statements by all relevant parties, the Eagle County District Attorney's Office filed separate sets of criminal charges against both the Plaintiff and the Defendant.  The Defendant eventually pleaded guilty to:  (1) criminal attempt to commit a third-degree assault and (2) criminal attempt to commit criminal extortion.[3]  The disposition of the charges against the Plaintiff is not revealed by the summary judgment record.

---

[3] Plaintiff's Ex. 11.  The extortion charge arose from the Defendant's post-incident texts to Joseph Mrak which threatened, among other things, investigations into Mr. Mrak's business activities and which the district attorney's office viewed as attempts at witness intimidation.  See Plaintiff's Ex. 8.

On January 17, 2018, the Plaintiff filed a civil lawsuit against the Defendant in the Eagle County, Colorado state district court. That litigation, also eventually styled as *Spears v. Hays*, was subsequently removed to the United States District Court for the District of Colorado on diversity grounds and proceeded before that court under civil action no. 18-cv-00445-NYW (the "Colorado Litigation"). The Plaintiff's First Amended Complaint in the Colorado Litigation alleged causes of action against the Defendant under Colorado law for assault, battery, and "extreme and outrageous conduct."[4]

While the Colorado Litigation was pending, the Defendant filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code in the Sherman Division of this Court on February 26, 2019. He and his spouse listed the Plaintiff as an individual unsecured claimant in their schedules for a "lawsuit for an alleged personal injury" of unknown value. On May 8, 2019, the Plaintiff filed an adversary complaint, seeking a declaration that the alleged indebtedness was nondischargeable as a debt arising from a willful and malicious injury under § 523(a)(6).

The Plaintiff subsequently filed the present Motion for Summary Judgment contending that the summary judgment evidence establishes a willful and malicious injury inflicted upon the Plaintiff as a matter of law. The Defendant timely opposed the Plaintiff's motion, asserting various grounds of justification for the Defendant's conduct

---

[4] Plaintiff's Ex. 2 to *Plaintiff's Motion for Summary Judgment* **[dkt #20]**. Under Colorado law, assault and battery are similar, but distinct, intentional torts. *Fine v. Tumpkin*, 2020 WL 1076122 at *2 (D. Colo. Mar. 6, 2020).

on the evening in question. The Defendant further objected to certain summary judgment exhibits tendered by the Plaintiff. Upon the filing of the Defendant's response in opposition to the summary judgment motion and the Plaintiff's reply thereto, the Court took the motion under advisement.

## Discussion

*Summary Judgment Standards and Process*

The Plaintiff brings her Motion for Summary Judgment in this adversary proceeding pursuant to Federal Rule of Bankruptcy Procedure 7056. That rule incorporates Federal Rule of Civil Procedure 56, which provides that summary judgment shall be rendered "if the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law."[5]

The party seeking summary judgment always bears the initial responsibility of informing the court of the basis for its motion.[6] As a movant, a party asserting that a fact cannot be genuinely disputed must support that assertion by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or

---

[5] FED. R. CIV. P. 56(a).

[6] *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

>   (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.[7]

The operation of the summary judgment standard depends upon which party will bear the burden of persuasion at trial. "If the moving party bears the burden of persuasion at trial, it must also support its motion with credible evidence . . . that would entitle it to a directed verdict if not controverted at trial."[8]

If the motion is supported by a *prima facie* showing that the moving party is entitled to judgment as a matter of law, a party opposing the motion may not rest upon the mere allegations or denials in its pleadings, but rather must demonstrate in specific responsive pleadings the existence of specific facts constituting a genuine issue of material fact for which a trial is necessary.[9] "A fact is material only if its resolution would affect the outcome of the action . . . ."[10] In so demonstrating, the nonmovant must show more than a "mere disagreement" between the parties,[11] or that there is merely

---

[7] FED. R. CIV. P. 56(c).

[8] *Sell v. Universal Surveillance Sys., LLC*, 2017 WL 3712188, at *3 (W.D. Tex. July 6, 2017) *(citing Celotex*, 477 U.S. at 331 (Brennan, J., dissenting)).

[9] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256-57 (1986); *Bayle v. Allstate Ins. Co.*, 615 F.3d 350, 355 (5th Cir. 2010).

[10] *Wiley v. State Farm Fire & Cas. Co.*, 585 F.3d 206, 210 (5th Cir. 2009); *accord Poole v. City of Shreveport*, 691 F.3d 624, 627 (5th Cir. 2012).

[11] *Calpetco 1981 v. Marshall Exploration, Inc.*, 989 F.2d 1408, 1413 (5th Cir. 1993).

"some metaphysical doubt as to the material facts."[12] Neither are unsubstantiated, conclusory assertions in the response sufficient to raise a genuine issue of material fact.[13] However, "[t]he issue of material fact which must be present in order to entitle a party to proceed to trial is not required to be resolved conclusively in favor of the party asserting its existence; rather, all that is required is that sufficient evidence supporting the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial."[14]

The record presented is reviewed in the light most favorable to the *nonmoving* party.[15] "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'"[16] Further, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."[17] Essentially, if a nonmovant fails to set forth specific facts that present a triable issue on any relevant issues, his claims should not

---

[12] *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

[13] *McCarty v. Hillstone Rest. Group, Inc.*, 864 F.3d 354, 357 (5th Cir. 2017).

[14] *Anderson*, 477 U.S. at 248-49 (*citing First Nat'l Bank of Arizona v. Cities Service Co.*, 391 U.S. 253, 288-89 (1968)).

[15] *Matsushita*, 475 U.S. at 587.

[16] *Id.*

[17] *Anderson*, 477 U.S. at 248.

survive summary judgment.[18]

In addition to the Rule 56 procedures outlined above, Local Rule of Bankruptcy Procedure 7056 invokes the requirements of Local District Court Rule CV-56 with reference to the content and determination of summary judgment motions.[19] That rule, in relevant part, directs a movant to include a Statement of Undisputed Material Facts and to support such a statement with "appropriate citations to proper summary judgment evidence."[20] It directs a respondent that any response "should be supported by appropriate citations to proper summary judgment evidence."[21] With regard to the disposition of the motion, the rule states:

> (c) **Ruling**. In resolving the motion for summary judgment, the court will assume that the facts as claimed and supported by admissible evidence by the moving party are admitted to exist without controversy, except to the extent that such facts are controverted in the response filed in opposition to the motion, as supported by proper summary judgment evidence. The court will not scour the record in an attempt to unearth an undesignated genuine issue of material fact.[22]

As an initial matter, the Defendant has challenged the admissibility of certain portions of the Plaintiff's summary judgment evidence. The Plaintiff's summary

---

[18] *Giles v. Gen. Elec. Co.*, 245 F.3d 474, 494 (5th Cir. 2001).

[19] BANKR. E.D. TEX. LOCAL R. 7056.

[20] "The phrase 'appropriate citations' means that any excerpted evidentiary materials that are attached to the motion or the response should be referred to by page and, if possible, by line." *Broussard v. Oryx Energy Co.*, 110 F.Supp.2d 532, 536 (E.D. Tex. 2000) (*citing* E. D. TEX. LOCAL R. CV-56(d)).

[21] E.D. TEX. LOCAL R. CV–56(b).

[22] E.D. TEX. LOCAL R. CV–56(c) (emphasis added).

-8-

judgment Exhibit 4 is a copy of a non-audio surveillance video obtained from a nearby facility which recorded the primary incident between the parties from a significant distance.[23] The Plaintiff hired an individual, Christopher Wheeler, to attempt to improve the quality of that video recording and, in the context of this motion, the Plaintiff has submitted the sworn declaration of Mr. Wheeler which solely addresses his actions to improve the quality of the original video.[24] Nevertheless, the Defendant objects to the declaration as testimony by a retained expert witness who was not disclosed by the deadline set forth in the Initial Scheduling Order and objects to the admissibility of the modified video as a violation of the best evidence rule and as hearsay.

The admissibility of the enhanced video is not precluded by the best evidence rule. The original of a writing, recording, or photograph must be used to prove its contents.[25] A duplicate is admissible to the same extent as an original, unless (1) a genuine question is raised as to the authenticity of the original, or (2) under the circumstances, it would be unfair to admit the duplicate in lieu of the original.[26] The Defendant effectively claims that the enhancements to the original surveillance video have changed its characteristics

---

[23] The original surveillance video was tendered as a component of the Defendant's summary judgment evidence.

[24] Plaintiff's Ex. 5 – Declaration of Christopher Wheeler.

[25] FED. R. EVID. 1002.

[26] FED. R. EVID. 1003. A "duplicate" is defined as a "counterpart produced by a mechanical, photographic, chemical, electronic, or other equivalent process or technique that accurately reproduces the original." FED. R. EVID. 1001(e).

such that it is no longer an admissible original recording because it no longer presents an accurate record of the surveillance images. Based upon its review of the original and the enhanced version, the Court disagrees. The enhanced version still fairly and accurately depicts the original videotaped image. The adjustments to the brightness or contrast of the video, as well as its enlargement of certain portions of the originally recorded images, do not change the images recorded, and the enhanced video remains a true and accurate recording of the events which occurred before the surveillance camera. The best evidence objection, as well as the accompaning hearsay objection, are each overruled.

The Defendant further objects that Mr. Wheeler should have been designated as an expert to explain his actions to improve the quality of the original surveillance video. The Plaintiff contends that such a designation was not required because Mr. Wheeler only authenticated the original video upon which the Defendant relies as well. He did more than that. As set forth in Mr. Wheeler's declaration, he performed an enhancement of the original surveillance video by converting it from a proprietary format to a more common one and then enhanced the video by utilizing a zoom feature to highlight the altercation between the parties on the tape and otherwise attempted to improve the brightness and contrast of the commercial surveillance video. Although Mr. Wheeler, as a self-described forensic analyst, makes no attempt to analyze the content of the video or otherwise opine about what it shows, his enhancement activities are generally beyond the ken of an average layman and his efforts are clearly designed to assist the factfinder in utilizing the

recorded images to determine the truth. That brings him into the realm of an expert and the fact that his enhancements pertain to the original surveillance video changes nothing.

However, the Court does not adopt the Defendant's contention that the failure to designate should result in the exclusion of Plaintiff's Exhibit 4 for summary judgment purposes. In this circuit, the exclusion of late-designated expert witnesses is governed by consideration of four factors: "(1) the explanation for the failure to identify the witness; (2) the importance of the testimony; (3) potential prejudice in allowing the testimony; and (4) the availability of a continuance to cure such prejudice."[27] While the Plaintiff's explanation for the lapse in designating Mr. Wheeler is rather unavailing, the factors regarding importance and prejudice in these circumstances are lessened by the fact that the original contents of the video were not altered nor modified, nor did Mr. Wheeler attempt to explicate what had been recorded on the video. The enhanced video is useful, though not critical, to the Plaintiff's case. Thus, the Court finds that the fourth factor is the most significant factor going forward. The Fifth Circuit has "repeatedly emphasized that a continuance is the preferred means of dealing with a party's attempt to designate a witness out of time."[28] Although this Court has always emphasized compliance with its pre-trial orders, exclusion in this circumstance is simply too harsh a remedy given that this expert does not intend to opine about what happened between the parties and that the

---

[27] *Betzel v. State Farm Lloyds*, 480 F.3d 704, 707 (5th Cir. 2007).

[28] *Id*. at 708.

enhancements to the video are not likely to be challenged.  Nevertheless, it is incumbent upon the Plaintiff to designate Mr. Wheeler as an expert with an appropriate report prior to trial despite his limited role and the Defendant shall be granted leave upon request to conduct appropriate discovery and file other appropriate motions prior to trial, though the Court is dubious that the Defendant has any actual desire to depose Mr. Wheeler about his limited activities.

*Section 523(a)(6): Debt Arising from Willful and Malicious Injury*

The United States Supreme Court has provided guidance as to what types of debts Congress intended to except from discharge pursuant to § 523(a)(6).[29]  In *Kawaauhau v. Geiger*,[30] the Supreme Court stated that:

> [T]he word "willful" in (a)(6) modifies the word "injury," indicating that nondischargeability takes a deliberate or intentional injury, not merely a deliberate or intentional act that leads to injury.  Had Congress meant to exempt debts resulting from unintentionally inflicted injuries, it might have described instead "willful acts that cause injury."  Or, Congress might have selected an additional word or words, i.e., "reckless" or "negligent," to modify "injury."  Moreover .

---

[29] Section 523(a)(6) of the Bankruptcy Code provides as follows:

> (a) A discharge under Section 727 ... of this title does not discharge an individual debtor from any debt ...
>
> > (6) for willful and malicious injury by the debtor to another entity or to the property of another entity.

[30] 523 U.S. 57 (1998).

-12-

> . . , the (a)(6) formulation triggers in the lawyer's mind the category "intentional torts," as distinguished from negligent or reckless torts. Intentional torts generally require that the actor intend "the consequences of an act," not simply "the act itself." RESTATEMENT (SECOND) OF TORTS § 8A, comment *a*, p. 15 (1964).[31]

The Supreme Court concluded that negligent or reckless acts are not sufficient to establish that a resulting injury is "willful and malicious" and that, therefore, "debts arising from recklessly or negligently inflicted injuries do not fall within the compass of §523(a)(6)."[32]

In *Miller v. J. D. Abrams, Inc. (In re Miller)*,[33] the Fifth Circuit analyzed the *Geiger* ruling in an effort to articulate a methodology by which to distinguish between acts intended to cause injury as opposed to those merely leading to injury. The *Miller* court determined that a "willful . . . injury" is established under § 523(a)(6) when there exists either: (1) an objective substantial certainty of harm arising from a deliberate action;[34] or (2) there is a subjective motive to cause harm by the party taking a deliberate

---

[31] *Id.* at 61.

[32] *Id.* at 64.

[33] 156 F.3d 598 (5th Cir. 1998).

[34] The "objective substantial certainty" prong "is a recognition of the evidentiary reality that a defendant in a bankruptcy context rarely admits any prior action was taken with the intent to cause harm to anyone. A court is thus expected to analyze whether the defendant's actions, which from a reasonable person's standpoint were substantially certain to cause harm, are such that the court ought to infer that the debtor's subjective intent was to inflict a willful and malicious injury on the plaintiff." *Mann Bracken, LLP v. Powers (In re Powers)*, 421 B.R. 326, 334-35 (Bankr. W.D. Tex. 2009). "Injuries covered by § 523(a)(6) are not limited to physical damage or destruction; harm to personal or property rights is also covered by § 523(a)(6)." *Andra Group, L.P. v. Gamble-Ledbetter (In re Gamble-Ledbetter)*, 419 B.R.

or intentional action. It further determined that the standard for determining the existence of a "willful" injury under *Geiger* had subsumed the Circuit's former standard for determining "malicious" conduct under § 523(a)(6) [i.e. "without just cause or excuse"] and had eliminated any need to conduct a separate analysis on that malice element.[35]

In the context of this alleged assault and battery, however, an additional element is introduced. In *Berry v. Vollbracht* (*In re Vollbracht*),[36] the Fifth Circuit recognized that, while "the subjective test requires only that [a § 523 defendant] intended some harm, not just serious harm . . . [and that] most garden-variety punches to the face are objectively very likely to cause harm . . . ,"[37]

> we similarly recognize that an injury levied as a legitimate response to someone else's action is usually the result of a "subjective motive to cause harm" and actions that can have an "objective substantial certainty of causing harm." Yet such an injury cannot be "willful and malicious" under § 523(a)(6). Consequently, we hold that our two-part test must countenance the actions of the injured party. That is, for an injury to be "willful and malicious" it must satisfy our two-part test ***and*** not be sufficiently justified under the circumstances to render it not "willful and malicious."[38]

Notwithstanding the admissibility of the enhanced video, and upon consideration

---

682, 698-99 (Bankr. E.D. Tex. 2009).

[35] *Miller,* 156 F.3d at 604-06.

[36] 276 F. App'x. 360 (5th Cir. 2007).

[37] *Id*. at 362.

[38] *Id*. (emphasis added).

of the remaining summary judgment evidence before the Court, there remain significant and genuine disputes as to the material facts surrounding the incident between the parties that night in January 2017, particularly in light of the fact that the summary judgment evidence must be viewed in the light most favorable to the Defendant as the nonmovant. The Court cannot agree with the Plaintiff's assertion that the tendered video evidence disproves the Defendant's contention that his response was unjustified as a matter of established fact. Nothing is actually "evident' from the submitted video evidence in a manner that establishes any relevant issue as undisputed or uncontradicted. The Court cannot agree that the prior conduct of the parties that night is irrelevant to the characterization of the Defendant's alleged conduct. The guilty plea of the Defendant does not establish any germane material fact given the status of Colorado law.[39] Finally, the Plaintiff understandably challenges the legitimacy of any justification defense offered

---

[39] The crime of third degree assault under Colorado law requires only reckless conduct. The Defendant pleaded only to the lesser offense of a criminal attempt to commit such an offense. The usefulness of that plea is thus extremely limited, since reckless conduct is insufficient to create a nondischargeable debt under § 523(a)(6). *Geiger*, 523 U.S. at 64 ["We hold that debts arising from recklessly or negligently inflicted injuries do not fall within the compass of § 523(a)(6)."].

Both Texas and Colorado apply the "most significant relationship" test arising from sections 6 and 145 of the Restatement (Second) of Conflict of Laws in determining what law applies in tort cases. *Gordon v. Chipotle Mexican Grill, Inc.*, 344 F. Supp. 3d 1231, 1245 (D. Colo. 2018) (citing *AE, Inc. v. Goodyear Tire & Rubber Co.*, 168 P.3d 507, 509–10 (Colo. 2007)); *Jacked Up, L.L.C. v. Sara Lee Corp.*, 854 F.3d 797, 815 (5th Cir. 2017) (citing *In re ENSCO Offshore Int'l Co.*, 311 S.W.3d 921, 928 (Tex. 2010) and RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 145 (Am. Law. Inst. 1971)). Section 145 provides that "[t]he rights and liabilities of the parties with respect to an issue in tort are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the occurrence and the parties under the principles stated in § 6." Applicable "contacts" to conisder include: (1) the place where the injury occurred; (2) the place where the conduct causing the injury occurred; (3) the domicil [and] residence . . . of the parties; and (4) the place where the relationship, if any, between the parties is centered. *Id*.

by the Defendant. However, the series of events forces the Court to make credibility determinations regarding any such defense and to evaluate the reasonableness of the parties' conduct as a whole in the entire context of the evening. That cannot be legitimately performed in a summary judgment context. While it is true that the Defendant failed to comply meaningfully with the requisite procedural rules regarding undisputed material facts under Local District Court Rule CV-56, the Court is still under an obligation to evaluate the evidentiary submissions of the parties and the summary judgment evidence of the Defendant is sufficient to place the burden on the Plaintiff to prove her allegations at trial, particularly when considered in the light of the three-part test invoked by *Vollbrecht* which is applicable to this dispute under § 523(a)(6).

## Conclusion

Based upon the Court's consideration of the pleadings, its resolution of the Defendant's objections to the evidence tendered, the summary judgment evidence admitted into the record, the relevant legal authorities, and for the reasons set forth herein, the Court concludes that the Plaintiff's Motion for Summary Judgment in the above-referenced adversary proceeding must be denied. An appropriate order shall be entered consistent with this opinion.

Signed on 09/16/2020

THE HONORABLE BILL PARKER
CHIEF UNITED STATES BANKRUPTCY JUDGE